UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAJED AYED SHOHATEE,

                Petitioner,

                                          CASE NO. 04-CV-74182-DT
v.                                    HONORABLE NANCY G. EDMUNDS

ANDREW JACKSON,

                Respondent.

_____/

**OPINION AND ORDER DENYING PETITION
FOR WRIT OF HABEAS CORPUS**

      Majed Ayed Shohatee ("Petitioner"), an inmate currently confined at the Mound

Correctional Facility in Detroit, Michigan, has filed a petition for writ of habeas corpus pursuant

to 28 U.S.C. § 2254 challenging his convictions for first-degree criminal sexual conduct and

assault with intent to murder which were imposed following a jury trial in the Wayne County

Circuit Court in 2000.  Petitioner was sentenced to concurrent terms of 11 years 3 months to 23

years imprisonment.  In his pleadings, Petitioner raises claims concerning the right to be present

at a critical stage of the proceedings, ineffective assistance of counsel, prosecutorial misconduct,

the jury instructions, the sufficiency of the evidence, and the right to counsel of choice at

sentencing.  For the reasons stated below, the Court denies the petition for writ of habeas corpus.

**I.**      **Facts**

      Petitioner's convictions stem from the beating and sexual assault upon Veronica Rivera

during the early morning hours on June 23, 1999.  The Michigan Court of Appeals set forth the

basic facts, which are presumed correct on habeas review, *see Monroe v. Smith*, 197 F. Supp. 2d

753, 758 (E.D. Mich. 2001), *aff'd.* 41 Fed. Appx. 730 (6th Cir. 2002), as follows:

> The victim testified that on the evening of June 22, 1999, she went to a bar with her friends. When she became separated from her friends, she went to another bar look for them. At Carmen's Bar, the victim saw defendant, whom she knew from working at defendant's brother's restaurant. When the victim expressed her wish to go home, defendant offered to drive her. Defendant and the victim left Carmen's bar, but went to Aloha's Bar before the victim again asked to be driven home. Instead of driving the victim home, defendant drove to an alley where he beat and raped her. The victim testified that after striking her multiple times, defendant pulled off her shoes, jeans, and underwear, and penetrated her with something that "felt like steel and hard, like a tool." Ultimately, the victim was found hiding in some bushes and was taken to a hospital by ambulance.
>
> An emergency room physician, Patricia Wilkerson, M.D., testified that the victim was able to answer questions, but was hysterical. The victim's blood alcohol level was .212, but she was able to converse and answer questions. Wilkerson described the victim's injuries including a bleeding 1 1/2 - centimeter internal vaginal laceration and a large external vaginal hematoma. Wilkerson said the lacerations were not consistent with normal vaginal intercourse, but with an object, such as a crowbar, being inserted. The victim suffered abrasions around her rectum and multiple contusions on her face, arms, back and chest. The victim also sustained a broken nose, a lacerated liver and a rib fracture.
>
> At the hospital, the victim told Detroit Police Officer Jeb Rutledge that her attacker was a man with whom she used to work named Majed. The victim was on pain medication during this interview. The victim's description of the attacker was "male, twenties, Majed Nassar, black hair, mustache, six[-]foot, thin build...." She referred to defendant as Majed Nassar because she thought that was his name. Officer Rutledge testified that the victim told him defendant drove a light-colored minivan. However, at trial, the victim testified that defendant drove a two-door Neon.
>
> Based on the victim's description, police arrested and questioned defendant. Defendant admitted he knew the victim from a restaurant his brother had owned and that he saw her the night of the assault. Defendant also said that during the early morning hours of June 23, 1999, "he left the bar, Stempien's Bar located on Martin just south of Michigan Avenue, that he went to Rally's Restaurant to pick up some food for his wife to take it home to her, and that was between the hours of 2:00 [a.m.] and 3:00 [a.m.]"

*People v. Shohatee*, No. 231394, 2003 WL 245771, *1 (Mich. Ct. App. Feb. 4, 2003).

At the close of trial, the jury found Petitioner guilty of first-degree criminal sexual

conduct and assault with intent to murder.  The trial court subsequently sentenced him to concurrent terms of 11 years 3 months to 23 years imprisonment.

## II.    **Procedural History**

Following sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals raising several claims of error, including claims contained in his habeas petition.  The court affirmed his convictions.  *People v. Shohatee*, No. 231394, 2003 WL 245771 (Mich. Ct. App. Feb. 4, 2003) (unpublished).  Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, which was denied.  *People v. Shohatee*, 469 Mich. 862, 666 N.W.2d 673 (2003).

Petitioner, through counsel, thereafter filed the present petition for writ of habeas corpus asserting the following claims:

> I.    The state court's factually incorrect ruling resulted in an unreasonable application of federal law in determining that Petitioner was not denied: (A) due process and the constitutional right to be present at a critical stage of the proceeding; and (B) the right to effective assistance of counsel.
>
> II.    The state court unreasonably applied clearly established federal law when rejecting Petitioner's claim that he was deprived due process of law and a fair trial by: (A) the trial prosecutor's argument asserting facts not in evidence; and (B) defense counsel's failure to object to prosecutor's improper argument.
>
> III.    The state court's determination that Petitioner was not denied due process of law by a misleading introduction of his immaterial statement to police was an unreasonable application of federal law.
>
> IV.    The state court unreasonably applied clearly established federal law when it found the evidence produced at trial was sufficient to support a finding of guilt beyond a reasonable doubt of assault with intent to murder.
>
> V.    The state court's determination that Petitioner was not denied his right to effective assistance of retained counsel of his choosing at sentencing was an unreasonable application of federal law.

Respondent has filed an answer to the petition contending that it should be denied.  Petitioner

has filed a reply to that answer.

## III.   <u>Standard of Review</u>

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), codified at 28 U.S.C. § 2241 *et seq*., govern this case because Petitioner filed his

habeas petition after the AEDPA's effective date.  *See Lindh v. Murphy*, 521 U.S. 320, 336

(1997).  The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State court proceedings unless
> the adjudication of the claim--
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable
>           application of, clearly established Federal law, as determined by the
>           Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination
>           of the facts in light of the evidence presented in the State court
>           proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule

that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of

facts that are materially indistinguishable from a decision of [the Supreme] Court and

nevertheless arrives at a result different from [this] precedent.'"  *Mitchell v. Esparza*, 540 U.S.

12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see

also Bell v. Cone*, 535 U.S. 685, 694 (2002).  "[T]he 'unreasonable application' prong of §

2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the

correct governing legal principle from [the Supreme] Court but unreasonably applies that

principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. "In order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by the Supreme Court's holdings, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

Lastly, this Court must presume that state court factual determinations are correct. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

**IV.    <u>Analysis</u>**

      A.    <u>Right to Be Present and Ineffective Assistance of Counsel Claims</u>

5

Petitioner first asserts that he is entitled to habeas relief because `neither he nor defense counsel were present when trial testimony was played back for the jury during deliberations. Petitioner relatedly alleges that defense counsel was ineffective for agreeing to the procedure employed by the trial court.  Respondent contends that these claims are not fully exhausted and/or that they lack merit.

The Michigan Court of Appeals set forth the relevant facts underlying these claims as follows:

> In this case, during deliberations, the jury requested the testimony of the victim and other witnesses.  The trial court stated that the transcripts were not ready, but that a play-back would be provided.  When the trial court requested the parties' input on its response to the jury's request, defense counsel stated only that it preferred that the victim's testimony be read back in its entirety, rather than partially.  After further discussions on this matter, the trial court decided that the court reporter and deputy would be present during the play-back.  In response to this decision, defense counsel indicated that he would not be present during the play-back because he had another trial; he stated, "I'm not even needed this afternoon ... it doesn't look like they are going to be deliberating this afternoon." The trial court then began to instruct the jury prompting defense counsel to interject, "[I]t's my understanding that we're talking about the tape recording of each different witness will be read back."  The trial court responded, "That's correct, the tape, the audiotape will be read back."  The trial court then instructed the jury:
>
>> Now, the procedure is that the Court Reporter will begin the playing of the tape, and she's going to play the tape all the way through to the end of that witness' testimony.  You cannot talk to the Reporter.  You cannot talk to the deputy.  You just have to listen and that's why I'm going [to] permit you to take notes.  You can take notes during the read-back, but you cannot ask the Court Reporter to stop it there and replay it, and continue on-you can't do that.  She's going to start the tape and the tape is going to go all the way through that [witness' testimony].

*Shohatee*, 2003 WL 245771 at *3-4.  The record indicates that the testimony of the victim (Veronica Rivera), the officer who took Petitioner's statement (Officer David Wasmund), the emergency room physician (Dr. Patricia Wilkerson), the owner of Carmen's bar (Mohammed

Naserdean) and a bar employee (Madelyn King) was played back for the jury as requested.  The record is unclear regarding whether the testimony of the victim's friend (Jeanette Gonzalez) and Petitioner's employer (Fares Hattar) was played back for the jury.

      1.    <u>Right to Be Present Claim</u>

Petitioner first asserts that the play-back of testimony for the jury in his absence and defense counsel's absence violated his right to be present at a critical stage of the proceedings. The United States Supreme Court has recognized that a criminal defendant has a fundamental right to be present at all critical stages of trial.  *See Rushen v. Spain*, 464 U.S. 114, 117 (1983); *see also United States v. Riddle*, 249 U.S. F.3d 529, 534 (6th Cir. 2001) (a criminal defendant has a constitutional right to be present at "all stages of the trial where his absence might frustrate the fairness of the proceedings").  This right is derived from the Due Process Clause of the Fifth and Fourteenth Amendments, as well as from the Sixth Amendment's Confrontation Clause.  *See United States v. Gagnon*, 470 U.S. 522, 526 (1985); *United States v. Shepherd*, 284 F.3d 965, 968 n.1 (8th Cir. 2002).

When the defendant is not confronting witnesses or evidence again him, however, this right is not absolute, but exists "whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge."  *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987) (citations and quotations omitted).  The right to be present is not guaranteed "when presence would be useless, or the benefit but a shadow."  *Id.*; *see also United States v. Brika*, 416 F.3d 514, 526 (6th Cir. 2005) (citing Supreme Court authority and finding that a defendant's absence from re-reading of previously given jury instructions did not thwart a fair trial).

The United States Supreme Court has never addressed whether the re-reading or play-back of testimony to a jury is a critical stage of trial; nor has the Supreme Court considered a

7

case with materially indistinguishable facts. *See Wauls v. Roe*, 121 Fed. Appx. 179, 181 (9th Cir. 2005); *LaCrosse v. Kernan*, 244 F.3d 702, 708 (9th Cir. 2001); *Cathron v. Jones*, 190 F. Supp. 2d 990, 1001 (E.D. Mich. 2002) (citing *LaCrosse*); *cf. Fisher v. Roe*, 263 F.3d 906, 915 (9th Cir. 2001), *overruled in part on other grounds Payton v. Woodford*, 346 F.3d 1204, 1218 n. 18 (9th Cir.2003). The United States Court of Appeals for the Sixth Circuit has also not addressed this precise issue. *But see Hudson v. Jones*, 351 F.3d 212, 217 (6th Cir. 2003) (where defense counsel was allowed to preview and challenge the trial court's proposed jury instructions, the actual moment of instructing the jury did not constitute a critical stage of the trial). Accordingly, this Court finds that the Michigan Court of Appeals' denial of relief on this issue is neither contrary to nor an unreasonable application of clearly established federal law.

Nonetheless, the Court is aware that a state court decision may involve an unreasonable application of Supreme Court precedent "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. Accordingly, for purposes of this opinion, the Court shall alternatively assume, without deciding, that the play-back of jury testimony is a critical stage of trial.

The Michigan Court of Appeals in this case recognized that a criminal defendant has the right to be present at all stages of trial where his substantial rights may be affected, but found that Petitioner had waived his objection to the method employed by the trial court in playing back the testimony, thereby extinguishing any error. *See Shohatee*, 2003 WL 245771 at *3-4.

Having considered the matter, the Court finds that the Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application of

federal law or the facts.   The right to be present may be knowingly and voluntarily waived.  *See Riddle, supra*, 249 F.3d at 534; *see also Taylor v. United States*, 414 U.S. 17, 19-20 (1973).

Moreover, waiver may be implied from a defendant's conduct.  *See United States v. Marshall*, 248 F.3d 525, 535 (6th Cir. 2001); *Cuoco v. United States*, 208 F.3d 27, 30 (2nd Cir. 2000).  The record in this case reflects that defense counsel agreed to the trial court's procedure regarding the play-back of the jury testimony.  Petitioner was present during that stipulation and did not raise any objection to it.  Petitioner neither alleges nor establishes that the waiver of the right to be present (or have counsel present) was involuntary or unknowing.  He has thus failed to establish that the Michigan Court of Appeals' decision is contrary to or an unreasonable application of federal law.  *See Hearnes v. Runnels*, No. 102CV6184AWISMSHC, 2005 WL 3309584, *15 (E.D. Cal. 2005) (denying habeas relief where, in defendant's presence, counsel stipulated to allowing a court reporter to enter the jury room and read back trial testimony to the jury).  Petitioner may not consent to a procedure and then claim prejudicial error.  *See, e.g., Brika,* 416 F.3d at 525 (finding that counsel's decision to permit trial judge to speak to jurors in jury room was an invited error that did not prejudice the defendant).

Lastly, even assuming that the trial court's actions amounted to a denial of Petitioner's right to be present/have counsel present or that the waiver of those rights was invalid, Petitioner is still not entitled to relief because any error involving the play-back of trial testimony was harmless.  For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also O'Neal v. McAninch*, 513 U.S. 432, 445 (1995) (habeas court should grant petition if it has "grave doubt" about whether trial error had substantial and injurious effect or influence

upon jury's verdict).  The denial of a criminal defendant's right to be present at a critical stage of the trial proceedings is generally subject to harmless error review.  *See Rushen*, 464 U.S. at 117-18 & n.2; *United States v. Toliver*, 330 F.3d 607, 611 (3rd Cir. 2003) (citing cases); *United States v. Harris*, 9 F.3d 493, 499 (6th Cir. 1993)); *see also Kentucky v. Stincer*, 482 U.S. at 745 (constitutional rights of defendant are not violated "when presence would be useless, or the benefit but a shadow.").  Harmless error review has been applied in the context of a defendant's and/or counsel's absence from the verbatim playback of trial testimony.  *See, e.g., Toliver*, 330 F.3d at 612, 615 (applying harmless error analysis to claims involving the denial of the right to be present and the denial of counsel); *Fisher*, 263 F.3d at 917; *United States v. Holton*, 116 F.3d 1536, 1544-46 (D.C. Cir. 1997); *see also Brika*, 416 F.3d at 527; *Marshall*, 248 F.3d at 535.

Petitioner has failed to establish that he was prejudiced by his or defense counsel's absence during the playback of trial testimony.  First, according to the procedure employed by the trial court, the entire trial testimony of the requested witnesses was played back verbatim without stoppage and with no new information provided to the jury.  Second, the record indicates that the testimony of the victim, a police officer who took Petitioner's statement, the emergency room physician, and the bar owner and employee were played back for the jury as requested.  Although Petitioner asserts that he was not consulted about the playback of the bar owner's and employee's testimony, he cannot establish prejudice given that such testimony contradicted the victim's testimony and was favorable to the defense.  While Petitioner asserts that the testimony of the victim's friend and Petitioner's employer was not played back for the jury as requested, the record is unclear on this point.  Nonetheless, such testimony had the potential to be both unfavorable and favorable to Petitioner.  Lastly, given the evidence presented at trial, particularly the victim's testimony and the physician's testimony, it cannot be

said that any error arising from the playback of the trial testimony had a substantial effect or influence on the jury's verdict. Habeas relief is not warranted on this claim.

2.    <u>Ineffective Assistance of Counsel Claim</u>

Petitioner relatedly contends that counsel was ineffective for waiving the right to be present at the playback of the witnesses' testimony. In *Strickland v. Washington,* 466 U.S. 668 (1984), the United States Supreme Court set forth a two-pronged test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. 466 U.S. at 687. Second, the petitioner must establish that the deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of

11

the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *McQueen v. Scroggy*, 99 F.3d 1302, 1311-12 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 686).

Citing *Strickland*, the Michigan Court of Appeals concluded that defense counsel's conduct was a matter of trial strategy, and that any purported error by counsel was not outcome determinative. *See Shohatee*, 2003 WL 245771 at *4. Given this Court's determination that Petitioner was not prejudiced by the conditions surrounding the playback of the trial testimony, this Court agrees that Petitioner cannot establish that defense counsel was ineffective under the standard set forth in *Strickland*. The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. Habeas relief is not warranted on this claim.

B.   Prosecutorial Misconduct/Ineffective Assistance of Counsel Claim

Petitioner next asserts that he is entitled to habeas relief because the prosecutor argued facts not in evidence during closing arguments. Petitioner relatedly asserts that counsel was ineffective for failing to properly object to such conduct. Respondent contends that these claims lack merit.

It is well-settled that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). The reviewing court's focus is on "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (quoting *Serra*, 4 F.3d at 1355).

12

The United States Court of Appeals for the Sixth Circuit has adopted a two-part test for determining whether prosecutorial misconduct violates a defendant's due process rights. *See Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002) (citing cases). First, the court must determine whether the challenged statements were indeed improper. *Id*. at 452. Upon a finding of impropriety, the court must decide whether the statements were flagrant. *Id.* Flagrancy is determined by an examination of four factors: 1) whether the statements tended to mislead the jury or prejudice the accused; 2) whether the statements were isolated or among a series of improper statements; 3) whether the statements were deliberately or accidentally before the jury; and 4) the total strength of the evidence against the accused. *Id.*; *see also Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000) (citing *United States v. Francis*, 170 F.3d 546, 549-50 (6th Cir. 1999)). "[T]o constitute the denial of a fair trial, prosecutorial misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial,' or 'so gross as probably to prejudice the defendant.'" *Pritchett*, 117 F.3d at 964 (citations omitted).

Petitioner claims that the prosecution argued facts not in evidence during closing arguments by implying that Petitioner and/or certain witnesses had agreed to discredit the victim's testimony. *See* Trial Tr. Vol. IV, p. 85. It is well-settled that it is misconduct for a prosecutor to misstate the evidence or to assume the existence of prejudicial facts not in evidence. *See Darden v. Wainwright*, 477 U.S. 168, 182 (1986); *United States v. Everett*, 270 F.3d 986, 993 (6th Cir. 2001). The Michigan Court of Appeals, however, concluded that the prosecutor's argument in this case was based upon reasonable inferences from the conflicts in the witnesses' testimony. *See Shohatee*, 2003 WL 245771 at *5.

Having reviewed the record, this Court concludes that the state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or

13

the facts.  The prosecutor's argument was not improper as it was based upon permissible inferences from the witnesses' testimony.  As noted by the Michigan Court of Appeals, there were conflicts in the bar witnesses' testimony and one bar employee claimed to have never seen Petitioner even though Petitioner was arrested at the bar a few days after the assault.  Given such evidence, the prosecutor's argument was not improper.  The fact that Petitioner disagrees with the prosecutor's characterization of the evidence does not mean that the prosecutor engaged in misconduct.  A prosecutor has leeway to argue reasonable inferences from the evidence.  *See, e.g., Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000).  The prosecutor's disputed comments were based upon reasonable inferences from the evidence and were not improper.  Further, considered in the context of the entire trial, such comments, even if unwarranted, did not render Petitioner's trial fundamentally unfair.

Petitioner relatedly claims that counsel was ineffective for failing to object to the prosecutor's comments.  Given that the prosecutor's comments were not improper and given that the Michigan Court of Appeals addressed the merits of this issue, Petitioner cannot establish that counsel's performance was deficient or that he was prejudiced by counsel's conduct as required by *Strickland, supra*.  Habeas relief is therefore not warranted on this claim.

C.    Jury Instruction Claim

Petitioner also asserts that he is entitled to habeas relief because the trial court erred in instructing the jury on his police statement because the statement was not a confession and should not have been considered as substantive evidence of guilt.  Respondent contends that this claim is procedurally defaulted and/or lacks merit.

Habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules.  *See Wainwright v. Sykes*, 433 U.S. 72

14

(1977); *Couch v. Jabe*, 951 F.2d 94 (6th Cir. 1991).  In *Wainwright*, the United States Supreme Court explained that a petitioner's procedural default in the state courts will preclude federal habeas review if the last state court rendering a judgment in the case rested its judgment on the procedural default.  433 U.S. at 85.  In such a case, a federal court must determine not only whether a petitioner has failed to comply with state procedures, but also whether the state court relied on the procedural default or, alternatively, chose to waive the procedural bar.  "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar."  *Harris v. Reed*, 489 U.S. 255, 263-64 (1989). The last *explained* state court judgment should be used to make this determination.  *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991).  If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion.  *Id.*

Here, the Michigan Court of Appeals rendered the last reasoned opinion.  In dismissing Petitioner's jury instruction claim, the court relied upon a state procedural bar -- Petitioner's failure to timely object to this matter at trial.  *See Shohatee*, 2003 WL 245771 at *5.  The failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors.  *See People v. Carines*, 460 Mich. 750, 763, 597 N.W.2d 130 (1999); *People v. Stanaway*, 446 Mich. 643, 687, 521 N.W.2d 557 (1994); *see also Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991).  Moreover, a state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits.  *See Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989).  Plain error review does not constitute a waiver of state procedural default rules.  *See Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 557 (6th

15

Cir. 2000).  Nor does a state court fail to sufficiently rely upon a procedural default by ruling on

the merits in the alternative.  *See McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991).

In this case, however, the Michigan Court of Appeals finding that defense counsel object

to the jury instructions after the jury was excused is belied by the record.  The trial transcript

reveals that defense counsel stated an objection to the trial court's jury instruction on

Petitioner's police statement prior to deliberations.  *See* Trial Tr. Vol. IV, pp. 117, 125, 127.

Accordingly, the Michigan Court of Appeals' procedural default determination constitutes an

unreasonable application of the facts.  Accordingly, this Court will address the merits of

Petitioner's jury instruction claim.

In order for habeas relief to be warranted on the basis of an improper jury instruction, a

petitioner must show that the challenged instruction was so infirm that it rendered the trial

fundamentally unfair.  *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991).  The burden of

demonstrating that an erroneous instruction was so prejudicial that it will support a collateral

attack on the constitutional validity of a state court's judgment is a heavy one.  The question in

such a collateral proceeding is "whether the ailing instruction by itself so infected the entire trial

that the resulting conviction violates due process," not merely whether "the instruction is

undesirable, erroneous, or even universally condemned."  *Henderson v. Kibbe*, 431 U.S. 145,

154 (1977) (quoting *Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973)); *see also Austin v. Bell*,

126 F.3d 843, 846 (6th Cir. 1997).  If an instruction is ambiguous and not necessarily erroneous,

it violates the Constitution only if there is a reasonable likelihood that the jury has applied the

instruction improperly.  *Binder v. Stegall*, 198 F.3d 177, 179 (6th Cir. 1999).  A jury instruction

is not to be judged in artificial isolation, but must be considered in the context of the

instructions as a whole and the trial court record.  *Grant v. Rivers*, 920 F. Supp. 769, 784 (E.D.

Mich. 1996).

At the close of trial, the trial court gave the jury standard Michigan Criminal Jury

Instruction 4.1, which provides:

> The prosecution has introduced evidence of a statement that it claims the
> defendant made.
>
> You cannot consider such an out of court statement as evidence against the
> defendant unless you do the following:
>
> First, you must find that the Defendant actually made the statement as it was
> given to you here in court.
>
> If you find that the Defendant did not make the statement at all, you should not
> consider it.  If you find that he made part of the statement, you may consider the
> part that you think he made.
>
> Second, if you find that the Defendant did make the statement, you must decide
> whether the whole statement or part of it is true.  When you think about the
> whether the statement is true, you should consider how and when the statement
> was made as well as all the other evidence in the case.
>
> You may give the statement whatever importance you think it deserves.  You
> may decide that it was very important or not very important at all.  In deciding
> this, you should once again think about how and when the statement was made
> and about all the other evidence in the case.

Trial Tr., Vol. IV, pp. 117-18.

Petitioner asserts that this instruction should not have been given because his statement

was not a confession, was immaterial, and should not have been considered as substantive

evidence of guilt.  In reviewing this claim for plain error, the Michigan Court of Appeals

concluded that the trial court did not err in instructing the jury on Petitioner's police statement

because the instructions referred to Petitioner's "statement" to a police officer that he saw the

victim on the night of the assault and did not characterize Petitioner's words as a "confession."

*See Shohatee*, 2003 WL 245771 at *5.  This decision is neither contrary to Supreme Court

17

precedent nor an unreasonable application of the law or the facts.  The trial court's standard jury instruction on the consideration of Petitioner's statement was appropriate under Michigan law and was not misleading.  Petitioner has failed to establish that the trial court erred, that the instruction was improper, or that the trial court's instructions as a whole denied him a fair trial. Habeas relief is not warranted on this claim.

      D.    <u>Insufficient Evidence Claim</u>

Petitioner next asserts that he is entitled to habeas relief because the prosecution presented insufficient evidence of intent to kill to support his assault with intent to murder conviction.  Respondent contends that this claim lacks merit and does not warrant habeas relief.

In *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), the United States Supreme Court established that a federal court's review of a sufficiency of the evidence claim must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." The Court must view this standard through the framework of 28 U.S.C. § 2254(d).  *See Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002).  Further, the *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n. 16.  "The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim."  *Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003) (citation omitted).

Under Michigan law, a conviction for assault with intent to murder requires proof beyond a reasonable doubt that the defendant committed:  "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder."  *People v. Hoffman*, 225 Mich. App 103, 111, 570 N.W.2d 146 (1997); *see also* Mich. Comp. L. § 750.83.

Circumstantial evidence and reasonable inferences drawn therefrom may be sufficient to prove the elements of the crime, *see People v. Jolly*, 442 Mich. 458, 466, 502 N.W.2d 177 (1993), including a defendant's intent or state of mind. *See People v. Dumas*, 454 Mich. 390, 398, 563 N.W.2d 31 (1997).

Applying the *Jackson* standard, the Michigan Court of Appeals concluded that the prosecution presented sufficient evidence of intent to kill to support Petitioner's assault with intent to murder conviction. The court based this determination on the victim's testimony that Petitioner hit her repeatedly in the face and head with a crowbar and did not stop beating her until she pretended to be dead, as well as the medical testimony that the victim suffered extensive injuries, including an internal vaginal laceration, external vaginal hematoma, multiple contusions, a broken nose, a lacerated liver, and a rib fracture. *See Shohatee*, 2003 WL 245771 at *2-3.

Having reviewed the record, this Court agrees and finds that the Michigan Court of Appeals' decision is neither contrary to nor an unreasonable application of *Jackson* or of the facts. As noted by the Michigan Court of Appeals, the verdict was supported by the victim's testimony detailing Petitioner's violent assault and the medical testimony confirming the seriousness of the victim's injuries. Given such evidence, a rational factfinder could reasonably conclude that Petitioner committed the crime of assault with intent to murder, and that he acted with sufficient intent.

Petitioner's insufficient evidence claim challenges the credibility and weight to be accorded the evidence presented at trial. However, it is well-settled that "[a] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved

19

any such conflicts in favor of the prosecution, and must defer to that resolution." *Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983). It is the job of the jury, not a federal habeas court, to resolve evidentiary conflicts. *See Jackson*, 443 U.S. at 326; *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002). Given the evidence presented at trial, this Court finds that the Michigan Court of Appeals' determination that a rational trier of fact could have found the elements of assault with intent to murder beyond a reasonable doubt was reasonable.

Furthermore, to the extent that Petitioner challenges the Michigan Court of Appeals' construction and interpretation of state law and the elements of the crimes, he is not entitled to habeas relief . State courts are the "ultimate expositors of state law." *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). State law determines the parameters of a state criminal offense and its elements and a federal court may not reinterpret state law on federal habeas review. *Tillman v. Cook*, 215 F.3d 1116, 1131-32 (10th Cir. 2000) (internal citations omitted). A federal habeas court must give deference to a state appellate court's construction of the elements of state crimes. *See Coe v. Bell*, 161 F.3d 320, 347 (6th Cir. 1998). This Court must therefore defer to the Michigan Court of Appeals' interpretation of the statute and construction of the elements of the crime and cannot grant habeas relief based upon such challenges. Habeas relief is not warranted on this claim.

E. <u>Right to Choice of Retained Counsel at Sentencing</u>

Lastly, Petitioner asserts that he is entitled to habeas relief because the trial court violated his rights at sentencing by refusing to grant a continuance so that he could retain new counsel and present additional witness. Respondent contends that this claim lacks merit and does not justify habeas relief.

A criminal defendant has a right to retain counsel of his choice to assist in his defense.

20

*Powell v. Alabama*, 287 U.S. 45 (1932).  The right to counsel of choice, however, is not absolute.  *See Wilson v. Mintzes*, 761 F.2d 275, 280 (6th Cir. 1985); *Linton v. Perini*, 656 F.2d 207, 209 (6th Cir. 1981).  When a defendant's pursuit of the right to retain counsel of choice is found to cause unreasonable delay, difficulties for the trial court, and prejudice to the prosecution or co-defendants, a trial judge may require that the matter proceed despite a defendant's inability to retain counsel of his choice.  *Linton*, 656 F.2d at 209.  The right to counsel of choice "must be balanced against the court's authority to control its own docket, and a court must be aware that a demand for counsel may be utilized as a way to delay proceedings or trifle with the court."  *United States v. Krzyske*, 836 F.2d 1013, 1017 (6th Cir. 1988).  "When an accused seeks substitution of counsel in mid-trial, he must show good cause such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict with his attorney in order to warrant substitution."  *Wilson*, 761 F.2d at 280.

Similarly, a trial court has broad discretion in determining whether to grant or deny a defendant's motion for a continuance in a criminal case.  *See Unger v. Sarafite*, 373 U.S. 575, 589 (1964).  "When a denial of a continuance forms the basis of a petition for a writ of habeas corpus, not only must there have been an abuse of discretion but it must have been so arbitrary and fundamentally unfair that it violates constitutional principles of due process."  *Bennett v. Scroggy*, 793 F.2d 772, 774-75 (6th Cir. 1986); *see also Morris v. Slappy*, 461 U.S. 1 (1983).

In this case, the Michigan Court of Appeals concluded that the trial court did not abuse its discretion in denying Petitioner's request for substitute counsel and a continuance, stating:

> Here, defendant had ample opportunity to obtain counsel of his choosing before
> the sentencing hearing.  While defendant claimed his family hired another
> attorney, no appearance had been filed, and the trial court received no
> notification from this attorney.  Further, defendant spoke at the hearing, and the
> trial court did not refuse to allow witnesses to speak on defendant's behalf.

21

Defendant knew the date of his sentencing hearing, yet did not ensure the witnesses' presence. Therefore, we find no abuse of discretion.

*Shohatee*, 2003 WL 245771 at *6.

Having reviewed the record, this Court concludes that the Michigan Court of Appeals' determination that Petitioner was not denied his right to counsel at sentencing is neither contrary to federal law nor an unreasonable application of that law. Petitioner never expressed any dissatisfaction with trial counsel prior to sentencing. Neither counsel nor Petitioner established that they had irreconcilable differences or that their relationship would prevent counsel from reviewing the presentence report or representing Petitioner at sentencing. The record also reveals that the victim would have been inconvenienced and the judicial process delayed by the grant of a continuance.

Moreover, Petitioner was not prejudiced by the trial court's actions. Petitioner had the opportunity to review the presentence reports and consult with defense counsel at sentencing. Petitioner stated his objections to the presentence report, presented some witnesses on his behalf, and was, in fact, sentenced at the low end of the guideline range. Petitioner has thus failed to establish that the trial court abused its discretion, or that his constitutional rights were violated by the trial court's refusal to grant a continuance on the day of sentencing. Habeas relief is not warranted on this claim.

**V.**     **Conclusion**

For the reasons stated, this Court concludes that Petitioner is not entitled to federal habeas relief on the claims presented in his petition.

Accordingly;

**IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED WITH**

22

**PREJUDICE**.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  April 26, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on
April 26, 2006, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager